RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0270p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

SIGNATURE MANAGEMENT TEAM, LLC,

*Plaintiff-Appellant*,

*v.*

JOHN DOE,

*Defendant-Appellee*.

No. 16-2188

─────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:13-cv-14005—Judith E. Levy, District Judge.

Argued: April 27, 2017

Decided and Filed: November 28, 2017

Before: SUHRHEINRICH, WHITE, and STRANCH, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Michael A. Sneyd, KERR, RUSSELL AND WEBER, PLC, Detroit, Michigan, for Appellant. Joshua Koltun, JOSHUA KOLTUN, San Francisco, California, for Appellee. **ON BRIEF:** Michael A. Sneyd, Joanne Geha Swanson, KERR, RUSSELL AND WEBER, PLC, Detroit, Michigan, for Appellant. Joshua Koltun, JOSHUA KOLTUN, San Francisco, California, for Appellee. Aaron Mackey, ELECTRONIC FRONTIER FOUNDATION, San Francisco, California, for Amicus Curiae.

WHITE, J., delivered the opinion of the court in which STRANCH, J., joined. SUHRHEINRICH, J. (pp. 11–13), delivered a separate dissenting opinion.

---

**OPINION**

---

HELENE N. WHITE, Circuit Judge.   Plaintiff, Signature Management Team, LLC ("Team"), prevailed in this action for copyright infringement but appeals the district court's refusal to unmask Defendant John Doe, an anonymous blogger.  Because the district court failed to recognize the presumption in favor of open judicial records, we **REMAND** with instructions to reconsider unmasking Doe in light of this opinion.

## I.  Background

Team is a multi-level marketing company that sells materials designed to help individuals profit in multi-level marketing businesses.[1]   John Doe anonymously runs a blog titled "Amthrax," in which he criticizes multi-level marketing companies.  Doe focuses much of his criticism on Team.  On January 18, 2013, Doe posted a hyperlink on his blog to a downloadable copy of the entirety of the fourth edition of a book copyrighted by Team, "The Team Builder's Textbook" ("the Work").  At the time of the infringement, the Work was in its ninth edition. After Team served Automattic, Inc. (the blog's host) with a take-down notice under the Digital Millennium Copyright Act, 17 U.S.C. § 512, Doe quickly removed the hyperlink to the Work.

On September 19, 2013, Team filed this action alleging one count of copyright infringement against Doe arising from his publication of the Work on his blog.  Team sought only injunctive relief, including a request that the district court identify Doe.  Team also requested an order instructing Doe to destroy all copies of the Work in his possession, and a permanent injunction ordering Doe to cease all infringing use of the Work.  In response, Doe asserted fair-use and copyright-misuse defenses.  Doe also asserted that he has a First Amendment right to speak anonymously, and that his identity should therefore not be disclosed to Team.

---

[1]Multi-level marketing is a sales strategy in which distributors have two sources of revenue.  First, distributors receive revenue from making direct sales to customers.  Second, distributors receive revenue from sales made by other distributors they have recruited.  This encourages existing distributors to recruit new distributors for the company.

Team then moved to compel discovery of Doe's identity.  In its order granting the motion in part and denying the motion in part, the district court applied the balancing test from *Art of Living Found. v. Does 1–10*, No. 10-CV-05022, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011), a case involving an organization seeking to unmask the operators of an anonymously run blog. This test is designed "to balance 'the magnitude of the harms that would be caused to the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant,'" *id.* at *4 (quoting *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 980 (N.D. Cal. 2005)), and includes two steps:

> (1) [t]he plaintiff must produce competent evidence supporting a finding of each fact that is essential to a given cause of action; and (2) if the plaintiff makes a sufficient evidentiary showing, the court must compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of the plaintiff and by a ruling in favor of the defendant.

*Id.* at *7.  Applying this test in the instant case, the district court concluded that unmasking an anonymous speaker is a significant and irreversible harm and, since there was a chance Doe would prevail on his fair-use defense, the court declined to unmask Doe at that time.  The court did, however, compel Doe to reveal his identity to the court and to Team's attorneys, subject to a protective order preventing Team from learning Doe's identity.

After discovery, Doe moved for summary judgment on his fair-use and copyright-misuse defenses, and the court denied his motion.  In denying Doe's motion, the court also stated that it was inclined to grant summary judgment for Team on its copyright infringement claim, but was inclined to grant only limited injunctive relief in the form of an order requiring Doe to destroy all copies of the Work in his possession.  The district court offered the parties time to submit supplemental briefing regarding the entry of summary judgment for Team.  *See* Fed. R. Civ. P. 56(f) (allowing a court to grant summary judgment to a nonmovant after giving notice and a reasonable opportunity to respond).  Instead of filing a supplemental brief, Doe brought a motion for reconsideration; Team submitted supplemental briefing.  The district court denied Doe's motion for reconsideration, entered summary judgment for Team, and denied Team's motion for further injunctive relief.  The court found that unmasking Doe "was unnecessary to ensure that defendant would not engage in future infringement of the Work" and that "defendant has already

declared to the Court that he has complied with the proposed injunctive relief" by destroying the copies of the Work in his possession such that "no further injunctive relief is necessary."

Team limits its appeal to the district court's refusal to unmask Doe. Team argues that (1) the district court improperly disregarded the strong presumption in favor of openness of judicial records; (2) since Doe is an adjudicated copyright infringer, his speech is not protected by the First Amendment; and (3) injunctions must enter in the name of the enjoined party.

## II. Analysis

### A. Standard of Review

A district court's decision to seal its records is reviewed for abuse of discretion. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 306 (6th Cir. 2016). However, "in light of the important rights involved, the district court's decision is not accorded the deference that standard normally brings." *Id.* (internal quotation marks and alterations omitted).

The scope of injunctive relief under the Copyright Act is reviewed for abuse of discretion. *Dig. Filing Sys., L.L.C. v. Aditya Int'l*, 323 F. App'x 407, 411 (6th Cir. 2009); *see also S. Cent. Power Co. v. IBEW, Local Union 2359*, 186 F.3d 733, 737 (6th Cir. 1999). "An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993).

### B. Right to Speak Anonymously

An author's decision to remain anonymous is "an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). While the right to anonymous speech is paramount to protect the political speech of persecuted groups, *see Talley v. California*, 362 U.S. 60, 64 (1960), it also protects advocates who "may believe [their] ideas will be more persuasive if [their] readers are unaware of [their] identity." *McIntyre*, 514 U.S. at 342. Internet speech receives the same First Amendment protection as other speech. *Reno v. ACLU*, 521 U.S. 844, 870 (1997). "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of

ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (alteration in original) (quoting *McIntyre*, 514 U.S. at 341–42).

With the explosion of anonymous Internet speech, courts have begun to develop balancing tests weighing the First Amendment right to anonymous speech against a plaintiff's interest in unmasking an anonymous defendant. *See id.* at 1175–76 (compiling balancing tests). All of these cases, however, have dealt with anonymity rights during the discovery process. No case has considered the issue presented here—whether and under what circumstances a court can properly protect a party's anonymity after judgment. This is an important distinction. The pre-judgment cases often deal with a plaintiff's need to unmask a defendant in order to effect service of process. *See, e.g., Sony Music Entm't, Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004). The tests are also designed to safeguard against unmasking potentially nonliable defendants. *See, e.g., Doe v. Cahill*, 884 A.2d 451, 457 (Del. 2005) (requiring plaintiffs to satisfy a summary judgment standard before obtaining the identity of an anonymous defendant because "[p]laintiffs can often initially plead sufficient facts to meet the good faith test . . . even if the defamation claim is not very strong"); *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999) ("People who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity.").

In contrast, the entry of judgment against a Doe defendant largely eliminates these concerns because the plaintiff will have established liability. On the other hand, where the anonymous defendant is determined to have fully complied with the relief granted, there is no practical need to unmask the defendant.

## C. Presumption of Open Judicial Proceedings

A Doe defendant's post-judgment anonymous speech rights conflict with another important post-judgment interest: the presumption of openness in judicial proceedings. There is

a "strong presumption in favor of open[]" judicial records.**2** *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983). Although a district court may enter a protective order during discovery upon a showing of "good cause," Fed. R. Civ. P. 26(c)(1), "there is a stark difference between so-called 'protective orders' . . . and orders to seal court records." *Shane Grp., Inc.*, 825 F.3d at 305. "Only the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983). And, where there is a compelling reason not to disclose certain information, the non-disclosure must be narrowly tailored to serve that reason. *Shane Grp., Inc.*, 825 F.3d at 305.

A district court must set forth specific reasons explaining its decision to keep judicial records confidential. *Id*. at 306. "[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Id*. at 305. Although this presumption of openness may be rebutted only when there is a compelling reason not to disclose the records, the burden on the party seeking non-disclosure is diminished where there is minimal public interest in learning the non-disclosed information. *Id.*

The presumption of open records typically implicates information known to the parties but submitted under seal—courts therefore focus on the *public's* interest in learning the sealed information. In unmasking cases, however, one of the *parties*, in addition to the public, is unaware of the defendant's identity. Unmasking cases thus require a slightly different analysis than standard unsealing decisions.

### D. Presumption in Favor of Unmasking

In this issue of first impression, we hold that like the general presumption of open judicial records, there is also a presumption in favor of unmasking anonymous defendants when judgment has been entered for a plaintiff. When deciding whether to unmask an anonymous defendant, courts must consider both the public interest in open records and the plaintiff's need to learn the anonymous defendant's identity in order to enforce its remedy. The greater a plaintiff's or the public's interest in unmasking a losing Doe defendant's identity, the more

---

**2**Although this case does not deal with sealed records, concealing a Doe defendant's identity implicates the same arguments regarding the public's interest in open judicial records.

difficult it will be for the Doe defendant to overcome the presumption and remain anonymous. Further, where a Doe defendant's speech is found to be beyond the protection of the First Amendment, countering the presumption will require a showing that the Doe defendant participates in a significant amount of other, non-infringing anonymous speech that would be chilled if his identity were revealed.

The open records doctrine is premised on allowing the public to inspect judicial records to increase public confidence in and understanding of the judicial system, and diminish the possibility of injustice, incompetence, perjury, and fraud. *See In re Cendant Corp.*, 260 F.3d 183, 193 (3d Cir. 2001); *see also Brown & Williamson Tobacco Corp.*, 710 F.2d at 1178. The presumption in favor of openness is stronger when there is a greater public interest in the subject matter of the litigation. *See Shane Grp., Inc.*, 825 F.3d at 305. Determining the public interest in the disclosure of the identity of a Doe defendant is a fact-intensive inquiry. For example, in a libel case, a district court should consider factors such as the content and subject matter of the speech, the frequency of the speech, the size of the audience for the speech, and the intent of the speaker. Intentional libelous speech that was read by a large number of persons, and which implicates a topic of public concern or a well-known figure, would carry a strong presumption in favor of unmasking. In contrast, the public interest would be weak where the libelous speech was negligent, read by few people, and arose from a personal feud. In a copyright case, the court should consider the reach of the copyrighted material, the economic losses suffered by the copyright holder, the reach of the infringed version of the copyrighted material, and the intent of the infringer. For example, the public interest would be stronger when the infringed material is a bestselling novel rather than a sparsely read instruction manual.

In addition to the public interest in the litigation, the presumption in favor of disclosure is stronger or weaker depending on the plaintiff's need to unmask the defendant in order to enforce its rights. For example, a plaintiff who obtains an ongoing remedy such as a permanent injunction will have a strong interest in unmasking an anonymous defendant. Conversely, a plaintiff will have little need to unmask a Doe defendant who has willingly participated in the litigation and complied with all relief ordered. Further, where the public interest is minimal and the Doe defendant's interest in remaining anonymous is substantial, a district court could

reasonably enter a judgment that conditions a defendant's continued anonymity on the satisfaction of the judgment within a certain timeframe. Such an approach would balance the plaintiff's need to enforce the judgment against allowing a defendant to act promptly to protect his interest in remaining anonymous.

Finally, a Doe defendant may rebut the presumption of openness by showing that he engages in substantial protected speech that unmasking will chill.[3] The court must engage in a fact-specific analysis that balances the extent to which unmasking would infringe on the exercise of Doe's First Amendment rights, against the strength of the presumption in favor of unmasking and the plaintiff's interest in unmasking Doe.

### E.  Balancing the Factors on Remand

The Copyright Act authorizes courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502.  Here, the district court ordered Doe to destroy all copies of the Work in his possession and provide confirmation to Team that he had done so.  The court expressly denied Team's request for a permanent injunction, and did so without regard to the anonymity issue.  The scope of this relief is not challenged on appeal.

In denying Team's request to unmask Doe, the district court reapplied the *Art of Living* balancing test that it had previously used in its order declining to compel discovery of Doe's identity.  The district court properly considered factors such as the non-necessity of a permanent injunction, Doe's compliance with all relief ordered, and that the majority of Doe's anonymous blogging constitutes protected speech.  However, the district court failed to recognize that "very different considerations apply" at the judgment stage than at the discovery stage, and that there is a "strong presumption in favor of openness as to court records."  *Shane Grp., Inc.*, 825 F.3d at 305 (internal quotation marks and citations omitted).  On remand, the district court should weigh the factors favoring anonymity against the public's interest in open proceedings in general and in this particular copyright-infringement lawsuit, as well as plaintiff's interest in unmasking Doe.

---

[3]To avoid creating a test for the evolving world of the Internet that quickly becomes obsolete, we do not address the issue of what other showing, if any, a Doe defendant may make to rebut the presumption in favor of unmasking.

The dissent notes that Doe's speech is not entitled to First Amendment protection to the extent that it constitutes copyright infringement. (Dis. Op. at 11.) On this point, we agree. The dissent goes further, however, and suggests that a determination that copyright infringement has occurred divests the district court of the discretion to allow Doe to remain anonymous. The dissent therefore concludes that "no balancing is required" and that the proper course is to "remand with instructions that the district court reveal Doe's identity." (Dis. Op. at 11.) The dissent also suggests that the question whether unmasking Doe "will harm his ability to exercise his right to anonymous speech in the future [is] collateral to the issue before us and therefore not properly considered in this proceeding." (Dis. Op. at 11 (emphasis omitted).) And, finally, the dissent takes issue with our suggestion that there may be no practical need to unmask Doe, arguing that declining to identify the defendant "minimizes the effect of the court's order, downplays the significance to Doe, encourages future misconduct, and hinders Team's ability to monitor compliance." (Dis. Op. at 12.)

We do not agree either that the district court lacks discretion to allow Doe to remain anonymous or that Doe's legitimate First Amendment right to speak anonymously is collateral to these proceedings. Although Doe's infringing speech is not entitled to First Amendment protection, that speech occurred in the context of anonymous blogging activities that are entitled to such protection. An order unmasking Doe would therefore unmask him in connection with both protected and unprotected speech and might hinder his ability to engage in anonymous speech in the future.

Further, we do not agree that allowing Doe to remain anonymous would necessarily diminish the impact of the ordered injunctive relief. The dissent's suggestion that a failure to unmask Doe would obligate the district court and Team's attorneys to monitor Doe's activity is inapposite because the district court declined to enter any ongoing injunctive relief. Since Doe has already complied with all aspects of the court's order, there will be no need for monitoring regardless whether the district court ultimately decides to unmask Doe. Finally, to the extent that the concerns identified by the dissent cut in favor of unmasking Doe, the district court should consider those factors on remand.

## III. Conclusion

For these reasons, we **REMAND** to the district court with instructions to apply the presumption established by this opinion and reconsider whether to amend the judgment and unmask Doe's identity.

_____

**DISSENT**

_____

SUHRHEINRICH, Circuit Judge, dissenting.  In this unusual appeal of a copyright infringement action, Team, the prevailing party, challenges the form of the judgment in its favor because the judgment does not identify the defendant.  The majority characterizes this as a case of first impression and also holds that remand is required under *Shane* because the district court failed to apply *Shane*'s "strong presumption in favor of openness as to court records." *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (internal quotation marks and citation omitted).  Although *Shane* is instructive, it is not binding because it deals with the sealing of court records, whereas the issue in this case is concealing the identity of an adjudged copyright infringer.  Copyright infringement is not protected speech—just like obscenity or fighting words.  If Doe's speech is not protected, then no balancing is required.  To the extent that unmasking him here will harm his ability to exercise his right to anonymous speech in the *future*, that is collateral to the issue before us and therefore not properly considered in this proceeding.  I see no need for further analysis and would remand with instructions that the district court reveal Doe's identity.

The judgment in this case embodies the district court's holding that Doe, by his actions in posting a full copy of Team's copyrighted Work on the Internet for anyone to download for free, infringed Team's copyright in violation of the Copyright Act.  The flip side of that finding is that Doe was *not* engaging in First Amendment protected speech.  As the Second Circuit has observed: "The First Amendment does not . . . provide a license for copyright infringement. . . . Thus, to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555–57 (1985) and *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 849 (11th Cir.1990)).  The fact that Doe used his anonymous blog to commit the infringement does not alter the conclusion, expressed in the judgment, that Doe committed

copyright infringement, and by implication, was not engaging in free speech when he posted that hyperlink.

Doe's identity was entitled to limited protection at the discovery stage because, at that point, it was not clear whether he had committed any wrong, and disclosure of his identity would cause irreparable harm in the event it was determined that he was innocent of copyright infringement and properly engaging in protected anonymous speech. For this reason, the *Art of Living* balancing test was properly applied during the discovery phase. But it is a temporal and temporary measure, created to facilitate discovery and to protect innocent defendants. It should not be extended to shield an adjudicated copyright infringer from the ramifications of the judgment against him. Having rejected Doe's fair use and copyright misuse defenses, having determined that Doe was liable for copyright infringement, and having ordered injunctive relief, there was no legal basis for entering a judgment that did not identify Doe. Thus, the district court erred in reapplying the *Art of Living* test after it had determined that Doe (by his own admission) was liable for copyright infringement and placing the burden on Team to establish why unmasking Doe's identity was necessary.

The majority acknowledges that "the entry of judgment against a Doe defendant largely eliminates" the need to protect a potentially nonliable defendant during the discovery phase, slip op. at 6, but then inexplicably concludes, without reasoning or support, that "where the anonymous defendant is determined to have fully complied with the relief granted, there is no practical need to unmask the defendant," *id*. Properly translated, this means that a copyright infringer retains the right to remain anonymous if he committed the copyright violation in some sort of proximity to protected anonymous speech. No one has cited, nor can I find, any legal authority allowing an adjudicated copyright infringer to remain anonymous after entry of judgment against him. Thus, Doe has no First Amendment right to be balanced.

More fundamentally, I simply do not understand how an injured plaintiff has "no practical need" to know who caused that injury. A judgment in an *in personam* action is meant to bind the parties to the court's order. Ordering injunctive relief against Doe without identifying him minimizes the effect of the court's order, downplays the significance to Doe, encourages future misconduct, and hinders Team's ability to monitor compliance. The first three concerns

are substantiated by *Doe's* motion for attorney's fees.  In the motion, Doe asserts that "Doe prevailed," R. 65, ID# 1834, since the district court "neither granted an injunction against future infringement of the Work, *nor did it strip Doe of his anonymity*."  R. 65, ID# 1834 (emphasis added).  Thus, according to Doe, Team obtained "only a technical or *de minimis* victory." *Id.*  In Doe's eyes—an adjudged copyright infringer—he *won* this case because the district court did not unmask him.  Leaving him masked gives him a blueprint to do this all over again.

The district court's solution as to the fourth factor—monitoring compliance—is problematic.  The district court knows Doe's real name, but monitoring blog sites on the internet is not a proper task for the judiciary.  Team's attorneys know his name too, but this requires Team to pay its attorneys to monitor Doe indefinitely.  Such an approach also interferes with the attorney-client privilege.  The majority posits that future monitoring is unnecessary, because Doe has already complied with all aspects of the court's order.  But if I were Team, I would want to keep an eye on Doe's future behavior.  As it currently stands, Team lacks that ability, and neither the district court nor Team's attorneys have any legal responsibility to do so either.

The majority's concern here is like that of an overprotective parent.  Doe should not be shielded from the consequences of his own actions, since he could have preserved his right to speak freely and anonymously by simply refraining from copyright infringement.